655 So.2d 69 (1995)
Michael Lee LOCKHART, Appellant,
v.
STATE of Florida, Appellee.
No. 82096.
Supreme Court of Florida.
March 16, 1995.
Rehearing Denied June 1, 1995.
*71 James Marion Moorman, Public Defender and Andrea Norgard, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Candance M. Sabella, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Michael Lee Lockhart, who pleaded guilty to first-degree murder for killing fourteen-year-old Jennifer Colhouer, appeals the death sentence imposed. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
We affirm Lockhart's conviction and death sentence.
Colhouer was killed in 1988 after Lockhart entered her Pasco County home. Using a knife from the Colhouer kitchen, Lockhart inflicted a number of wounds described as pricking, prodding, or teasing wounds. He also bound Colhouer's arms, strangled her with a towel, and stabbed her at least seven times in the abdomen. Some of the stab wounds were so deep that her internal organs protruded. The medical examiner testified that Colhouer could have been conscious for as long as three minutes after Lockhart began to strangle her. As Colhouer was dying, Lockhart turned her over and raped her anally.
Assistant Public Defender William Eble initially was appointed to represent Lockhart. A month later he moved for a continuance and to withdraw, arguing that he could not be ready when trial started because of his workload, the complexity of the case, and the travel required due to Lockhart's out-of-state convictions. The judge denied Eble's motions.
Later in that hearing, Lockhart pleaded guilty against Eble's advice. Lockhart then asked the court to dismiss Eble because he wanted to represent himself. The court refused to dismiss Eble completely. Instead, he kept Eble on as "advisory counsel." As advisory counsel, Eble would be present in the courtroom, but Lockhart would not be required to accept his advice. Because Lockhart did not want to present mitigation, the judge signed an order prohibiting Eble from spending county funds to investigate potential mitigation without Lockhart's direction.
The trial court refused Lockhart's request to sentence him without impaneling a jury for the penalty phase. When the penalty phase began, Eble again sought to withdraw. He argued that Florida statutes precluded advisory counsel and that ethical obligations required him to act against Lockhart's wishes. Lockhart again said he wanted to represent himself, and the court allowed Eble to withdraw. Eble would be available if Lockhart needed to consult him, but he was not required to remain in the courtroom.[1]
During the penalty phase, the State presented evidence of Lockhart's robbery conviction in Wyoming and of his capital convictions in Texas and Indiana.[2] Lockhart did not present any witnesses. His closing statement included a request to jurors that they "[d]o exactly what the District Attorney asks you. Do the right thing, and that is return the death penalty."
The jury voted unanimously to recommend the death penalty. In sentencing Lockhart to death, the trial judge found four aggravating factors: (1) previous conviction of another capital felony or of a felony involving the use or threat of violence to the person; (2) murder committed while engaged in the commission *72 of, or an attempt to commit, a sexual battery; (3) murder was especially heinous, atrocious, or cruel; and (4) murder committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification. § 921.141(5)(b), (d), (h), (i), Fla. Stat. (1989). The trial judge did not find any statutory or nonstatutory mitigation.
Lockhart raises twelve issues on this direct appeal.[3]
Contrary to Lockhart's assertions, we find that he understood the nature of the charges against him and the consequences of pleading guilty to first-degree murder. Thus, the trial court did not err in accepting his plea.
Lockhart next argues that the trial court erred in failing to conduct a Faretta[4] inquiry when he initially asked to represent himself during a pretrial hearing. At that time, the judge did not grant his request. Instead, the judge allowed Lockhart to direct his defense, but ordered defense counsel to remain in an advisory capacity. The State indicated during oral argument that Lockhart consulted Eble during the pretrial period about clothing for trial, medical records, and help in securing a witness. When defense counsel moved to withdraw at the start of the penalty phase and Lockhart renewed his request to proceed pro se, the judge conducted a Faretta inquiry. The record shows that Lockhart made a knowing and intelligent waiver of counsel after the trial judge informed him about the dangers and disadvantages of self-representation. We find no merit to this issue.
Lockhart also contends that the trial court erred in allowing Detective Fay Wilber, who investigated Colhouer's murder, to testify about the homicides in Indiana and Texas because he had no opportunity to rebut the unreliable hearsay testimony. Wilber had attended parts of both out-of-state trials and had reviewed case files from those crimes.
Florida's death penalty statute allows the introduction of hearsay testimony during capital sentencing proceedings. § 921.141(1), Fla. Stat. (1989).[5] Lockhart had the opportunity to cross-examine Detective Wilber. On a few occasions, the trial judge restricted questioning because Lockhart interrupted the witness or because he tried to testify himself, but the judge did not abuse his discretion.
As his next issue, Lockhart argues that the trial court erred in allowing Detective Wilber to testify about the out-of-state crimes and to show eight photographs from the Indiana crime. Details of prior violent felony convictions involving the use or threat of violence to the victim are admissible in the penalty phase of a capital trial. Waterhouse v. State, 596 So.2d 1008, 1016 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). Such testimony helps determine whether "the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the judge and jury." Elledge v. State, 346 So.2d 998, 1001 (Fla. 1977).
*73 Evidence of other violent crimes should not be admitted when it is "not relevant, gives rise to a violation of a defendant's confrontation rights, or the prejudicial value outweighs the probative value." Rhodes v. State, 547 So.2d 1201, 1205 (Fla. 1989). The testimony supported the aggravating factor of prior violent felony. See § 921.141(5)(b), Fla. Stat. (1989). Although Detective Wilber and the medical examiner testified in some detail about the Indiana crime, the detail helped show the similarity of the Indiana and Florida crimes. It also was a valid attempt by the State to try to establish the cold, calculated, and premeditated aggravating factor. Under the facts of this case, the prejudicial value of the testimony did not outweigh its probative value, so the trial court did not err in admitting the testimony.
In addition, there was no error in admitting the eight photographs from the Indiana crime. The admissibility of photos is within the trial court's discretion and will not be disturbed on appeal absent a showing of clear error. Wilson v. State, 436 So.2d 908, 910 (Fla. 1983). Although the Indiana photos are gruesome, they show with clarity the similarities between the injuries suffered by the victims in Florida and Indiana. The photos include separate views of the Indiana victim. They did not become an impermissible feature of Lockhart's Florida trial.
Lockhart contends that the record does not support the trial court's finding that the crime was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification. We disagree. This Court recently said that to find this aggravating factor:
[T]he jury must determine that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); and that the defendant exhibited heightened premeditation (premeditated); and that the defendant had no pretense of moral or legal justification.
Jackson v. State, 648 So.2d 85, 89 (Fla. 1994) (citations omitted).
The facts of this crime alone support a finding of CCP. Lockhart went to Colhouer's house in the afternoon. There was no evidence of forced entry, so apparently Lockhart convinced Colhouer to let him in. The evidence shows that she was bound at one time and tortured by small pricking knife incisions just below the skin. She was then strangled and, while still alive, stabbed with several incisions. She also was anally assaulted. When police arrived, Colhouer was found naked from the waist down.
It is evident that this killing was not something that occurred on the spur of the moment. The fact that Colhouer was bound and tortured before she was killed indicates that the incident happened over a period of time. The nature and complexity of the injuries indicate that Lockhart intended to do exactly what he did at the time he entered Colhouer's house. Thus, the trial court did not err in finding CCP.
Lockhart also argues that the trial judge erred in sentencing him based, in part, on information that he had no opportunity to rebut or explain. See Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). The trial judge said in his sentencing order:
H. Defendant presented no evidence of any kind, and an explanation of his conduct can only be gleaned from interviews he has given to newspaper reporters outside this Court. None of this information so gleaned mitigates in his favor.
The trial judge did not discuss the substance of these articles, and the articles are not in the record.
In Gardner the United States Supreme Court considered whether a trial judge could impose a death sentence based on confidential information in a presentence investigation that was not disclosed to the defendant or his counsel. A plurality of the Court held that Gardner was denied due process when the death sentence was imposed based, in part, on information that Gardner had no opportunity to deny or rebut. Id. at 362, 97 S.Ct. at 1206-07. The Florida Supreme Court subsequently held that "[s]hould a sentencing *74 judge intend to use any information not presented in open court as a factual basis for a sentence, he must advise the defendant of what it is and afford the defendant an opportunity to rebut it." Porter v. State, 400 So.2d 5, 7 (Fla. 1981).
The State argues that there was no Gardner violation because the trial judge rejected any information he read in the newspaper and did not consider it in aggravation or mitigation. We disagree with the State because the sentencing order indicates that the judge relied on information from the newspaper articles to support his finding of no mitigation. However, given the overwhelming evidence supporting three aggravating factors, this error did not injuriously affect Lockhart's substantial rights. Delap v. State, 440 So.2d 1242, 1257 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). The sentencing order reflects that the trial judge was concerned that Lockhart chose not to present mitigating evidence. He apparently read the newspaper articles in an attempt to find something in mitigation. Although the articles are not in the record, they were based on interviews that Lockhart himself gave and he cannot claim that such information is confidential. See Spaziano v. State, 393 So.2d 1119 (Fla.), cert. denied, 454 U.S. 1037, 102 S.Ct. 581, 70 L.Ed.2d 484 (1981) (reversing death sentence and remanding when trial judge relied on confidential information in a presentence investigation to impose sentence).
Finally, we decline Lockhart's invitation to recede from Hamblen v. State, 527 So.2d 800 (Fla. 1988), where this Court found no error in the trial court's failure to appoint independent counsel to present mitigating evidence where the defendant demanded or requested a death sentence because the trial judge "carefully analyzed the possible statutory and nonstatutory mitigating evidence." A defendant has a constitutional right to represent himself when competent to do so. Allowing counsel to take a position contrary to the defendant's wishes through the vehicle of guardian ad litem would violate the dictates of Faretta. Where a judge thoughtfully analyzes facts and does not merely rubberstamp the State's position, see Hamblen, 527 So.2d at 804, we do not believe that independent counsel must be appointed.
We find no merit or procedural bars to the remaining issues Lockhart raises.[6]
Accordingly, we affirm the conviction and death sentence imposed on Lockhart.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Lockhart did, in fact, request and receive Eble's assistance at one point during the penalty phase.
[2] Lockhart shot and killed a police officer in Texas. He killed a sixteen-year-old girl in Indiana in a crime that bore a striking resemblance to the instant case. He was sentenced to death for both the Texas and Indiana murders.
[3] Whether (1) the trial court erred in accepting Lockhart's guilty plea; (2) Lockhart's waiver of counsel was freely, intelligently, and voluntarily made; (3) the trial court erred in restricting Lockhart's voir dire and in denying challenges for cause to two prospective jurors; (4) the trial court's statements to the venire improperly denigrated the jurors' sentencing responsibilities; (5) the trial court erred in allowing the State to introduce unreliable hearsay testimony that Lockhart had no opportunity to rebut; (6) the trial court erred in overruling objections to testimony about and photographs of collateral crimes; (7) the trial court improperly restricted Lockhart in presenting mitigating evidence; (8) the trial court failed to adequately renew the offer of counsel before sentencing Lockhart; (9) the trial court failed to weigh mitigating evidence available in the record; (10) the trial court erred in finding the cold, calculated, and premeditated aggravator; (11) the trial court improperly considered information not in the record; and (12) this Court should recede from Hamblen v. State, 527 So.2d 800 (Fla. 1988), and require the appointment of special counsel to present mitigating evidence when a defendant requests a death sentence.
[4] Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).
[5] This statute provides in relevant part:

Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.
[6] Issue 3 (no merit to first subissue; second subissue not preserved); Issue 4 (not preserved); Issue 7 (no merit); Issue 8 (no merit); Issue 9 (no merit).