827 So.2d 201 (2002)
John Bruce VINING, Appellant,
v.
STATE of Florida, Appellee.
No. SC99-67.
Supreme Court of Florida.
July 3, 2002.
Rehearing Denied September 19, 2002.
*206 Terri L. Backhus of Backhus & Izakowitz, P.A., Tampa, FL; and John Bruce Vining, pro se, Raiford, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, FL, for Appellee.
*207 PER CURIAM.
John Bruce Vining appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
Vining was convicted of first-degree murder and armed robbery in 1990. The pertinent facts of the crime are described in detail in this Court's opinion on Vining's direct appeal. See Vining v. State, 637 So.2d 921, 923-24 (Fla.1994). The judge followed the jury's recommendation and imposed a death sentence for the first-degree murder conviction. The judge also sentenced Vining as a habitual offender to life imprisonment on the armed robbery conviction. On appeal, this Court affirmed both the convictions and sentences. See id. at 928. Vining's petition for certiorari was denied by the United States Supreme Court. See Vining v. Florida, 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994).
Vining filed his original motion for post-conviction relief in March 1996, pursuant to an extension granted by this Court. He amended the motion in December 1996, raising a total of twenty-five claims. Based upon the claim that the judge who presided over Vining's trial and sentencing conducted an independent investigation and considered extra-record materials not presented in open court, the judge disqualified himself and a new judge presided over Vining's postconviction motion. A Huff[1] hearing was held in June 1997 and the court conducted an evidentiary hearing in April 1999 on Vining's claims of Brady[2] violations and ineffective assistance of trial counsel based upon the trial judge's independent investigation and consideration of extra-record materials. Following this evidentiary hearing, the postconviction court denied relief on all of Vining's postconviction claims in a detailed twenty-nine page order.
On appeal to this Court, Vining raises fourteen claims, including a number of subclaims. Vining claims that (1) the lower court failed to properly consider the evidence withheld by the State as being material evidence under Brady; (2) he was denied the effective assistance of counsel and a fair and impartial tribunal because the trial judge utilized extra-record information in violation of Gardner v. Florida;[3] (3) the lower court should have conducted an evidentiary hearing on his claims of newly discovered evidence and ineffective assistance of counsel during the guilt phase proceedings; (4) trial counsel failed to adequately investigate and present mitigating evidence and to adequately challenge the State's case during the penalty phase proceedings; (5) trial counsel failed to object to a number of constitutional errors; (6) the one-year time limit imposed by Florida Rule of Criminal Procedure 3.851 is unconstitutional on its face and as applied because it denies capital defendants due process and equal protection; (7) Florida's death penalty is unconstitutional; (8) insufficient aggravating circumstances render him ineligible for the death penalty; (9) Rule Regulating the Florida Bar 4-3.5(d)(4), which prohibits an attorney *208 from initiating communication with a juror regarding the trial, improperly restricted his ability to discover information that would warrant a new trial; (10) the appellate transcript is unreliable because substantial proceedings were made off the record, including portions of voir dire and the penalty phase and the entire sentencing proceeding, and counsel was ineffective for failing to raise this issue on appeal; (11) he was involuntarily absent during critical stages of the trial proceedings; (12) prosecutorial misconduct relating to evidence of collateral crimes presented during the penalty phase caused prejudice that resulted in a fundamentally unfair proceeding; (13) he was denied a full and fair evidentiary hearing on his public records claim; and (14) the cumulative errors in his trial, sentencing, and direct appeal deprived him of the effective assistance of counsel, the right to counsel, a fundamentally fair trial, due process of law, and individualized sentencing.
In claim one Vining contends that the lower court failed to properly consider several items of evidence withheld by the State as being material evidence of his innocence, which constituted Brady violations. The lower court conducted an evidentiary hearing on this claim and heard testimony from several witnesses including police detectives who investigated the crime and both of Vining's trial counsel. The court determined that the defense already possessed one of the items alleged to have been withheld.[4] As to the items that had not been disclosed,[5] the court determined that this evidence was not material and no prejudice ensued from its nondisclosure.
A defendant must demonstrate the following elements before a Brady violation has been proven: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence has been suppressed by the State, either wilfully or inadvertently; and (3) the defendant has been prejudiced by the suppression of this evidence. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Way v. State, 760 So.2d 903, 910 (Fla.2000), cert. denied, 531 U.S. 1155, 121 S.Ct. 1104, 148 L.Ed.2d 975 (2001); Thompson v. State, 759 So.2d 650, 662 (Fla.2000). A defendant is prejudiced by the suppression of exculpatory evidence if it is material, in other words if "there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Strickler, 527 U.S. at 289, 119 S.Ct. 1936.
In the instant case, the lower court concluded that no prejudice occurred from the withheld items because Vining did not show any inconsistencies between the items and the trial testimony nor did he show how the items could have been used to impeach the witnesses. Further, the court determined that the evidence was not material under Brady as Vining had not shown that there is a reasonable probability *209 that his conviction or sentence would be different. After reviewing the record and the order below, we agree with the postconviction court's conclusion that Vining failed to show the prejudice and materiality required for a Brady violation. Thus, we affirm the denial of relief on this claim.
As his second claim on appeal, Vining contends that he was denied effective assistance of counsel and a fair and impartial sentencing proceeding because the judge who presided over his trial and sentencing relied upon extra-record information in violation of Gardner v. Florida and that trial counsel's failure to object to this information constituted ineffective assistance of counsel. On direct appeal, Vining raised a Gardner claim, arguing that he had been denied due process, the right to confront witnesses, and the effective assistance of counsel by the trial judge's consideration of extra-record evidence. Specifically, he claimed that the trial judge read all of the depositions in the court file, read the medical examiner's report and discussed it with the medical examiner, obtained and reviewed the probate records of the victim's estate to compare the claims filed against the estate with the testimony at trial regarding the items consigned to the victim, and conducted an independent investigation at various locations relating to the victim. This Court concluded that the issue was waived for purposes of appellate review because defense counsel never objected to the court's consideration of this material even though the trial judge clearly informed counsel that he had reviewed these materials. See Vining, 637 So.2d at 927.
Under Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), a sentencing judge who intends to use any information not presented in open court as a factual basis for a sentence must advise the defendant of what the information is and afford the defendant an opportunity to rebut it. See also Porter v. State, 400 So.2d 5, 7 (Fla.1981) (vacating death sentence where trial court relied on deposition testimony to support two aggravating factors without advising defendant of intention to use the deposition and affording defendant opportunity to rebut, contradict, or impeach the deposition testimony). However, even where a Gardner violation occurs, this Court may conclude that such error is harmless. See Consalvo v. State, 697 So.2d 805, 818 (Fla.1996) (finding that court erred in referring to out-of-court deposition testimony, but error was harmless because court did not actually rely on any information that was not otherwise proven during trial); Lockhart v. State, 655 So.2d 69, 73-74 (Fla.1995) (finding that Gardner violation occurred when trial court relied on information from newspaper articles not presented in open court to support its finding of no mitigation, but that error "did not injuriously affect [the defendant's] substantial rights" and that the defendant could not claim that such information was confidential when the articles were based on interviews that the defendant gave). This Court specifically distinguished the harmless error in Consalvo from the reversible error in Porter because the Consalvo trial court "made reference to facts which were established at trial by evidence other than that referred to in the sentencing order." Consalvo, 697 So.2d at 817.
In the instant case, while the sentencing order did state that the judge read all of the depositions, read the medical examiner's report, and checked the victim's probate records, all of which constitute extra-record materials, the trial judge revealed his consideration of these matters both in letters to the parties and during a motion hearing prior to the penalty phase. See *210 Vining, 637 So.2d at 927. Thus, unlike both Gardner and Porter, Vining was advised by the trial judge of his consideration of extra-record information and afforded an opportunity to rebut or impeach the information. Further, like Consalvo, the information relied upon in the sentencing order to support the aggravating factors was otherwise proven at trial. And like Lockhart, "given the overwhelming evidence supporting [the] aggravating factors, this error did not injuriously affect [the defendant's] substantial rights." Lockhart, 655 So.2d at 74. Thus, it is questionable whether a Gardner violation occurred in this case, but even if it did, any error was harmless.
As to the subclaim that trial counsel was ineffective in failing to object or rebut the extra-record materials when brought to counsel's attention by the court, Vining fails to meet the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland requires a defendant claiming ineffective assistance of counsel to show both (1) that counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. See id. at 686, 104 S.Ct. 2052. For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See id. at 695, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla. 1997).
While counsel may have been deficient in failing to object to the trial judge's consideration of this extra-record information, Vining was not prejudiced by this failure, as noted in the Gardner analysis above. See Consalvo; Lockhart. Thus, Vining is not entitled to relief on his claim of ineffective assistance of counsel and we affirm the lower court's denial of this claim.
Even though the postconviction court below properly concluded that Vining was not entitled to relief on his Gardner claim, we strongly disapprove the actions of the judge who presided over Vining's trial and sentencing. The judge overstepped his boundaries by conducting an independent investigation and by reviewing information that was not presented during the trial. We caution that such behavior does not promote public confidence in the integrity and impartiality of the judiciary. See Fla. Code Jud. Conduct, Canons 1, 2A.
Vining's third issue encompasses a newly discovered evidence claim and a claim of ineffective assistance of counsel during the guilt phase proceedings. Vining further claims that the lower court erred in denying these claims without an evidentiary hearing. He contends that expert witnesses could provide "newly discovered evidence" that the diamond sold by Vining could not be the same diamond consigned to the victim before her death and that these experts could point out inconsistencies in the trial testimony identification of the diamonds. The lower court ruled that this could not constitute "newly discovered evidence" as "trial counsel knew of these witnesses at the time [Vining] was originally tried." As to the claim of ineffective assistance of counsel regarding identification of the diamond and the chain of custody, the lower court ruled that Vining had failed to show either deficient performance or prejudice as required by Strickland.
The trial record shows that several witnesses positively identified the diamond in question as being the one in the victim's possession before her death, while several other witnesses raised doubt as to the identification of the diamond. The record also reveals that trial counsel effectively *211 cross-examined the witnesses as to their expertise and their identification of the diamond. We agree with the postconviction court that this conflicting testimony was properly left to the jury to evaluate. Even if further expert testimony about the identification of the diamond could be considered newly discovered evidence, there is no reasonable probability that this evidence would have changed the outcome of the verdict. See Jones v. State, 591 So.2d 911, 915 (Fla.1991) ("[I]n order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial."). Thus, we affirm the postconviction court's denial of relief on the diamond identification claim.
As part of claim three, Vining also asserts that the lower court should have conducted an evidentiary hearing on his claim of ineffective assistance of counsel during the guilt phase. Specifically, Vining claims that trial counsel failed to properly challenge three witnesses and did not inform the jury that these witnesses had been hypnotized by the sheriff prior to identifying Vining as the suspect last seen with the victim. The lower court found the hypnosis claim procedurally barred because it was raised and rejected on direct appeal and that the procedural bar could not be bypassed by couching it as an ineffective assistance of counsel claim.
On direct appeal, this Court ruled that the record supported the trial court's conclusion that the witnesses had not been hypnotized as defined by this Court in Stokes v. State, 548 So.2d 188, 190 (Fla. 1989), and thus their testimony was properly admitted at trial. See Vining, 637 So.2d at 926. Because this Court denied the hypnosis claim on the merits on direct appeal, the substantive claim is procedurally barred in Vining's postconviction challenge. See Swafford v. Dugger, 569 So.2d 1264, 1267 (Fla.1990) (stating that postconviction proceedings are not to be used as a second appeal). Moreover, trial counsel did not render ineffective assistance on the hypnosis issue when it was determined that the witnesses had not been hypnotized and counsel ably questioned the witnesses' identifications of Vining during cross-examination.
Vining also claims that counsel was ineffective in failing to object to the trial judge's consideration of extra-record materials as they relate to his conviction. However, the record below shows that the jury did not see and was not aware of any of these materials during either its guilt or penalty phase deliberations. Further, as discussed above, this Court upheld the trial court's determination that the identification witnesses had not been hypnotized and thus their testimony was properly admitted at trial. See Vining, 637 So.2d at 926. Thus, the trial judge's review of the materials at issue had no bearing on the jury's determination of Vining's guilt and the postconviction court properly denied this claim.
In his fourth claim, Vining contends that trial counsel rendered ineffective assistance during the penalty phase by failing to adequately investigate and present mitigating evidence and to adequately challenge the State's case. He also claims that he was entitled to an evidentiary hearing on this claim. In his 3.850 motion below, Vining made a broad claim that he was deprived of an adversarial testing at the penalty phase of his trial, including that trial counsel failed to present "evidence to support non-statutory mitigating evidence demonstrating Mr. Vining's good moral character and background." The lower court summarily denied relief on this claim, finding that the trial record refuted the claim because the jury heard testimony from six of Vining's relatives, who discussed *212 his alcohol consumption and family history. The lower court also concluded that any claim that mitigating evidence had been improperly rejected during Vining's penalty phase trial was procedurally barred because it had been raised and rejected on direct appeal. See Vining, 637 So.2d at 928 ("The record supports the court's conclusion that the other proposed factors either had not been established by the evidence presented or could not be considered of a mitigating nature."). Based on the trial record and the direct appeal, we affirm the summary denial of this part of claim four.
In his amended motion to the lower court, Vining also asserted that counsel "unreasonably failed to present ... other mitigating evidence, including statutory and nonstatutory mental health mitigating evidence." The motion offered no further explanation of the purported mental health evidence that counsel failed to present. At the Huff hearing, Vining's counsel never mentioned any mental health mitigating evidence. Postconviction counsel instead focused almost entirely on trial counsel's failure to object to the trial judge's reliance on extra-record material (the Gardner issue discussed above). Postconviction counsel argued that trial counsel failed to present adequate evidence of the suggested mitigating circumstances rejected by the trial judge. After the postconviction court granted an evidentiary hearing only on the penalty phase aspects of the Gardner claim of ineffective assistance, Vining filed a motion for rehearing, arguing that he was entitled to an evidentiary hearing on his entire claim that counsel rendered ineffective assistance in presenting mitigating evidence during the penalty phase proceedings. In this motion for rehearing, Vining for the first time made factual allegations relating to his claim that counsel was ineffective in investigating and presenting mental health mitigating evidence. Vining attached a report from a clinical neuropsychologist stating an opinion that Vining suffers from hypomania, is bipolar, and has brain damage from his alcohol consumption.
The lower court denied Vining's motion for rehearing, and its order denying postconviction relief does not specifically address the mental health mitigating evidence. However, we conclude that this aspect of the claim was insufficiently pled in Vining's December 1996 motion for postconviction relief and thus the lower court properly denied relief. See Arbelaez v. State, 775 So.2d 909, 915 (Fla.2000) ("Where a motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied."); see also Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998).
Only after the lower court denied an evidentiary hearing on the mitigating evidence claim did Vining make any mention of the neuropsychologist's report. A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by refining his or her claims to include additional factual allegations after the postconviction court concludes that no evidentiary hearing is required. Cf. Pope v. State, 702 So.2d 221, 223 (Fla.1997) (stating that a defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions). Rule 3.850 specifically prohibits successive motions unless "the facts on which the claim is predicated were unknown by the movant or the movant's attorney and could not be ascertained by the exercise of due diligence." Clearly, the claim of ineffective presentation of mental health evidence was encompassed in Vining's broader mitigating evidence claim and should have been fully pled at the time *213 he filed the claim. Where a previous motion for postconviction relief has raised a claim of ineffective assistance of counsel, the postconviction court may summarily deny a successive motion which raises an additional ground for ineffective assistance of counsel. See Pope, 702 So.2d at 223. This applies equally where a defendant raises additional claims in a motion for rehearing. See Fla. R.App. P. 9.330(a) ("A motion for rehearing ... shall not present issues not previously raised in the proceeding.").
As to the claim that counsel rendered ineffective assistance with regard to the penalty phase witnesses who testified about a prior Georgia incident,[6] the postconviction court concluded that Vining failed to demonstrate prejudice from any failure in this regard. Gail Flemming, the victim of the Georgia incident, testified about her abduction, how Vining and his accomplice terrorized her, threatened to murder her, took her to a vertical grave in the woods, and proceeded with the murder plan until the police arrived and rescued her. A Georgia police officer testified about the incident and Vining's involvement. Trial counsel objected to the testimony of these witnesses, effectively limited their testimony on certain aspects of the incident through objection, and also moved for mistrial based on their testimony. Thus, trial counsel cannot be deemed ineffective on this issue. Accordingly, for the reasons stated above, we affirm the lower court's denial of relief on claim four.
Claim five encompasses a number of alleged constitutional errors: Vining's death sentence rests on an unconstitutional automatic aggravating circumstance; the cold, calculated, and premeditated (CCP) jury instruction was unconstitutionally vague; the CCP statutory language is unconstitutionally vague; Vining's death sentence violates the requirements of Lockett v. Ohio;[7] the prior violent felony aggravating circumstance rests upon unconstitutionally obtained prior convictions; and the jury was improperly instructed on the "under sentence of imprisonment" aggravating circumstance. Vining also claims that counsel was ineffective in failing to properly object to these alleged errors or to raise the claims on appeal. We conclude that the postconviction court properly denied relief as to each of these subclaims. We discuss each in turn below.
First, the substantive claim that Vining's death sentence rests on an unconstitutional automatic aggravating circumstance should have been raised on direct appeal and thus is procedurally barred. See Garcia v. State, 622 So.2d 1325, 1326 n. 3, 1327 n. 5 (Fla.1993); Johnston v. Dugger, 583 So.2d 657, 662 n. 2 (Fla.1991). Thus, only the ineffective assistance of counsel claim was properly raised below. However, this Court previously has rejected the substantive claim on the merits, and counsel cannot be deemed ineffective for failing to make a meritless argument. See Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
Second, the claim that the CCP instruction is unconstitutionally vague is procedurally barred because the *214 instruction was neither specifically objected to at trial nor pursued on appeal. See Brown v. State, 755 So.2d 616, 622 (Fla. 2000). Further, on direct appeal, this Court held that the trial court erred in finding the CCP aggravating factor, but found the error to be harmless beyond a reasonable doubt. See Vining, 637 So.2d at 928. Thus, Vining cannot prove prejudice from trial counsel's failure to object to the instruction. Vining further argues that counsel was ineffective for failing to object to the CCP statutory language as unconstitutionally vague. However, this Court has rejected the substantive claim and counsel cannot be deemed ineffective for failing to raise a meritless argument. See Klokoc v. State, 589 So.2d 219, 222 (Fla.1991).
Vining contends that his death sentence violates the requirements of Lockett because the trial court rejected nonstatutory mitigating evidence relating to his alcohol consumption and family background. The substantive claim is procedurally barred because it was raised and rejected on direct appeal. See Vining, 637 So.2d at 927-28 (finding that record supported trial court's conclusion that proposed mitigating factors either had not been established by the evidence presented or could not be considered of a mitigating nature). Vining also asserts an ineffectiveness claim, arguing that trial counsel failed to effectively argue the mitigating evidence and that the trial judge relied on extra-record materials in rejecting the nonstatutory mitigation. During Vining's trial, counsel presented evidence relating to the nine mitigating factors proffered. This included the testimony of Vining's ex-wife, his brothers, a family friend, and his children. These witnesses testified about Vining's family background and history, his family history of alcoholism, and his record of being a good family member and father. In light of this presentation, counsel cannot be deemed ineffective in this regard nor can counsel be blamed because Vining's background "could not be considered of a mitigating nature." Vining, 637 So.2d at 928. Thus, Vining failed to meet the requirements of Strickland on this subclaim.
As his fifth subclaim, Vining asserts that the prior violent felony aggravating circumstance rests upon unconstitutionally obtained prior convictions. However, the record shows that this claim was abandoned by Vining's postconviction counsel at the Huff hearing. Counsel admitted that she could not plead facts to prove this claim because the Office of Capital Collateral Representative (CCR) had been unable to investigate Vining's previous convictions. Counsel further conceded that Vining was not entitled to a hearing on the claim without this factual predicate. Thus, the claim was insufficiently pled and the lower court properly denied relief. See Arbelaez v. State, 775 So.2d 909, 915 (Fla.2000).
In his final constitutional error subclaim, Vining asserts that the jury was improperly instructed on the "under sentence of imprisonment" aggravating circumstance because it was not instructed that this aggravator should be accorded less weight because he had not escaped from prison, but was merely on parole at the time of the offense. The lower court properly determined that the claim of instructional error was procedurally barred because it should have been raised on direct appeal. See Thompson v. State, 759 So.2d 650, 665 (Fla.2000) (stating that substantive challenges to jury instructions are procedurally barred in postconviction challenges because the claims could and should be raised on direct appeal). Further, counsel cannot be deemed ineffective for failing to object to the standard jury instruction *215 or to request a special instruction.[8]See id. (stating that trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient). We also note that during closing argument Vining's trial counsel emphasized to the jury that Vining was on parole for forgery charges and thus the jury should not give great weight to the "under sentence of imprisonment" aggravating circumstance. Thus, the lower court properly denied relief on all of the claims of constitutional error.
In claim six Vining contends that the one-year filing requirement for postconviction relief in capital cases[9] violates due process and equal protection and suspends the right to habeas corpus for capital prisoners. The lower court summarily denied this claim, finding that the unconstitutionality of rule 3.851 was not an appropriate issue to be considered in a rule 3.850 motion. The lower court also noted that Vining was actually given more than two years to file his motion, based upon the numerous extensions granted to him.
This Court has repeatedly rejected arguments that the one-year time limit imposed by Florida Rule of Criminal Procedure 3.851 is unconstitutional. See, e.g., Arbelaez v. State, 775 So.2d 909, 919 (Fla. 2000); Koon v. Dugger, 619 So.2d 246, 251 (Fla.1993). To the extent that Vining claims that counsel rendered ineffective assistance because of the rule, we agree with the postconviction court's assessment that "claims of ineffective assistance of postconviction counsel do not present a valid basis for relief." See Lambrix v. State, 698 So.2d 247, 248 (Fla.1996).
Vining argues in claim seven that Florida's death penalty scheme is unconstitutional. This Court rejected Vining's direct appeal claim that the death penalty statute is unconstitutional. See Vining, 637 So.2d at 927. Further, this Court has repeatedly rejected claims that electrocution is unconstitutional. See, e.g., Provenzano v. Moore, 744 So.2d 413, 415 (Fla. 1999), cert. denied, 528 U.S. 1182, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000); Jones v. State, 701 So.2d 76, 79 (Fla.1997); Medina v. State, 690 So.2d 1241, 1244 (Fla.1997). We have also rejected claims that lethal injection is unconstitutional and that the application of the amended statute violates the ex post facto clause. See Bryan v. State, 753 So.2d 1244, 1253 (Fla.) (stating that lethal injection is "generally viewed as a more humane method of execution"), cert. denied, 528 U.S. 1185, 120 S.Ct. 1236, 145 L.Ed.2d 1132 (2000); Sims v. State, 754 So.2d 657, 664 (Fla.) (finding no ex post facto violation), cert. denied, 528 U.S. 1183, 120 S.Ct. 1233, 145 L.Ed.2d 1122 (2000). Thus, we affirm the postconviction court's summary denial of this claim.
In claim eight Vining argues that he is "innocent of the death penalty" as there are insufficient aggravating circumstances to establish his eligibility for a death sentence. Even though this Court struck down the CCP aggravating factor *216 on direct appeal, we found that the three remaining aggravating circumstances (committed during a robbery, under sentence of imprisonment, and previous violent felony conviction) were supported by the record. See Vining, 637 So.2d at 928. Also, we found no merit to Vining's claim that the trial court erred in rejecting a number of proffered nonstatutory mitigating factors. See id. We concluded that Vining's death sentence was appropriate in light of the three valid aggravating circumstances and one nonstatutory mitigating factor (good military history) which was given little weight. See id. In order to prevail on a claim of being innocent of or ineligible for the death sentence he received, a defendant "would have to show constitutional error invalidating all of the aggravating circumstances upon which the sentence was based." In re Medina, 109 F.3d 1556, 1566 (11th Cir.1997). Vining has not made such a showing here. Thus, this claim is meritless and the lower court's denial is affirmed.
In claim nine, Vining argues that the Rules Regulating the Florida Bar improperly restricted his attorney's ability to discover information that would warrant a new trial. The lower court concluded that Vining was not entitled to relief on this claim because he did not allege specific reasons to believe that any particular juror was unqualified to serve and, in the absence of cause to believe that juror misconduct has occurred, voir dire is the proper judicial proceeding for investigating juror biases or prejudices.
Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar prohibits a lawyer from initiating communication with any juror regarding the trial with which the lawyer is connected, except to determine whether the verdict may be subject to legal challenge. The rule provides that the lawyer "may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist." Before conducting such an interview, the lawyer must file a notice of intent to interview setting forth the name of the juror to be interviewed and deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview.
In Arbelaez v. State, 775 So.2d 909 (Fla. 2000), we found a similar claim procedurally barred because it was not raised on direct appeal. Like Arbelaez, Vining did not allege any particular reasons to believe that the verdict might be subject to legal challenge. "Instead, he appears to be complaining about a defendant's inability to conduct `fishing expedition' interviews with the jurors after a guilty verdict is returned. Thus, even if the claim were not procedurally barred, [the defendant] would not be entitled to relief on the grounds he asserted and no evidentiary hearing was required on this claim." Id. at 920. Further, this Court has cautioned "against permitting jury interviews to support postconviction relief" for allegations which focus upon jury deliberations. Johnson v. State, 593 So.2d 206, 210 (Fla.1992). The lower court's summary denial of this claim is affirmed.
Vining alleges in his tenth claim that he was denied a fair appeal because the record was incomplete and unreliable and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Any claim relating to the inadequacy of the appellate record is procedurally barred because it should have been raised during direct appeal. See Thompson v. State, 759 So.2d 650, 660 (Fla.2000); Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323-24 (Fla.1994). Further, rule 3.850 motions are not the proper vehicle to advance claims of ineffective assistance of appellate counsel. Such claims *217 must be raised in a habeas petition to this Court. See Thompson, 759 So.2d at 660; Teffeteller v. Dugger, 734 So.2d 1009, 1026 (Fla.1999). Thus, we affirm the postconviction court's summary denial of this claim.
In claim eleven Vining contends that he was involuntarily absent during critical stages of the proceedings which resulted in his conviction and sentence of death.[10] Vining further claims that counsel rendered ineffective assistance in failing to object to his absence during these proceedings.
In the order denying postconviction relief, the lower court stated that "it is questionable whether these proceedings [raised in Vining's motion] were critical stages of the trial." We conclude that the lower court erred in this regard. A defendant has a "constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his absence." Francis v. State, 413 So.2d 1175, 1177 (Fla.1982). Florida Rule of Criminal Procedure 3.180(a) provides, in pertinent part, that a defendant shall be present at any pretrial conferences, unless he waives his presence in writing; during the examination, challenging, impanelling, and swearing of the jury; and at all proceedings before the court when the jury is present.
In Coney v. State, 653 So.2d 1009, 1012 (Fla.1995), this Court explained that it is error for the defendant not to be present during a pretrial meeting between the lawyers and the judge. However, we concluded that the error was harmless in Coney's case because the meeting was a routine status conference prompted by a delayed trial date, where several technical, procedural, and legal issues were discussed, and that the defendant's presence would not have assisted the defense in any way. See id. at 1012-13. Coney also involved the defendant's absence from the immediate site of a bench conference where pretrial juror challenges were exercised, even though the defendant was present in the courtroom. This Court clarified that "presence" means being physically present at the immediate site where pretrial juror challenges are exercised. See id. at 1013. However, the Court ruled that this clarification was prospective only in application and that in Coney's case any error was harmless as the conferences "involved a legal issue toward which [Coney] would have had no basis for input." Id.
The substantive claims relating to Vining's absence are procedurally barred as they should have been raised either at trial or on direct appeal. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) ("[I]ssues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack."). Thus, only Vining's claims of ineffective assistance of counsel were properly raised in his 3.850 motion.
In relation to this claim, Vining has failed to show how he was prejudiced by his absence during the pretrial and prepenalty phase proceedings, nor has he asserted how he could have made a meaningful contribution to counsel's legal arguments during these preliminary proceedings. *218 As to Vining's absence from the bench conferences, while our ruling in Coney requires a defendant's physical presence at the immediate site of a bench conference, that ruling was prospective in application and thus did not apply to Vining's 1990 trial. See Boyett v. State, 688 So.2d 308, 309 (Fla.1996) (stating that Coney rule regarding physical presence did not apply retroactively to trial that took place before Court's opinion was released). Furthermore, as the lower court noted, Vining has not shown that any matter discussed during these bench conferences required his consultation nor has he demonstrated any prejudice from his absence. While Vining cites a number of pages in the trial record where he allegedly was not present for bench conferences, he does not elaborate on what was discussed during these conferences or how he was prejudiced by his absence during them. Finally, as to Vining's absence when the jury asked the judge a question during guilt deliberations, the lower court noted that both defense counsel and the prosecutor were present when the trial judge responded "no" to the jurors' question of whether they should decide on an advisory sentence if they should agree on a verdict of first-degree murder. Because this was clearly the appropriate response, the postconviction court concluded, and we agree, that any error resulting from Vining's absence was clearly harmless. Thus, we affirm the lower court's denial of the claim relating to Vining's absence because he has failed to meet the Strickland prejudice prong.
Vining argues in claim twelve that the prosecutor introduced inflammatory collateral crime evidence that rendered his trial fundamentally unfair. The postconviction court found this claim to be procedurally barred because it was raised and rejected on direct appeal. In his direct appeal to this Court, Vining raised a number of claims of improper prosecutorial argument, including improper emphasis on the victim's suffering in the crime committed by Vining in Georgia. This Court found no merit to the issue, explaining that "[m]uch of the prosecutor's argument that Vining labels as impermissible consisted of explaining the nature of the statutory aggravating factors and the weight the jury should accord each of them. Other comments did not taint the jury's recommendation of death." Vining, 637 So.2d at 927. To the extent that Vining raises a different claim relating to the prosecutor's argument about the Georgia incident, that claim is also procedurally barred as it was available and should have been raised on direct. See Smith v. State, 445 So.2d 323, 325 (Fla.1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Thus, we affirm the postconviction court's summary denial of this claim.
In claim thirteen, Vining argues that he was denied access to "[m]any public records ... that are routinely provided to other inmates" and that the lower court erred in denying his public records claim without an evidentiary hearing. However, the procedural history in Vining's postconviction case belies this claim. On June 14, 1996, the lower court conducted a hearing on Vining's motion to compel the production of public records. During this two and one-half hour hearing, the court heard testimony from a Florida Department of Law Enforcement (FDLE) employee, the records custodian of the Orange County Sheriffs Department, and the medical records custodian for the Orange County Corrections Division. During this hearing, the judge expressed frustration with the nature of the questioning by Vining's CCR *219 counsel, noting that counsel's questions would be suitable during a deposition of the witnesses but were not appropriate during a hearing on a motion to compel. At a continuation of this hearing on August 1, 1996, Vining was represented by a different CCR attorney who acknowledged receipt of documents from FDLE following the June hearing. When Vining's counsel could not specify what documents were still outstanding, the court chided him for a lack of diligence in failing to examine the public records received. The court then denied Vining's motion to compel as legally insufficient and ordered the State to respond to the postconviction motion. However, the court did grant Vining's motion to file an amended motion and granted him several extensions. Vining filed an amended postconviction motion on December 23, 1996, and the Huff hearing was conducted on June 20, 1997. In February 1998, the court permitted Vining's CCR counsel to withdraw and granted substitution of private postconviction counsel. While the court denied the private counsel's motion to amend the postconviction motion or to expand the scope of issues to be considered at the evidentiary hearing, on November 19, 1998, the court granted Vining's request for additional public records. This order required Vining to submit a demand to each agency with a list of the specific documents requested within thirty days and to submit a list of all the documents requested to the court as well. The court further ordered the agencies to comply within fifteen days and to file a notice of compliance with the court. The order also scheduled an evidentiary hearing on Vining's postconviction motion for April 1999.
Although Vining now contends that there are many public records outstanding, he made no further complaint on the public records issue during the five-month span between the postconviction court's public records order and the evidentiary hearing. Based on this record, we conclude that the court afforded Vining ample time and opportunity to pursue any public records claim. Through his own actions, Vining either waived or abandoned any claim that he was denied public records.
In his final claim on appeal, Vining argues that he was denied a fundamentally fair proceeding based upon the cumulative errors that occurred during his trial, sentencing, and direct appeal and that these errors deprived him of the effective assistance of counsel, the right to counsel, a fair trial, and an individualized sentencing. However, as discussed in the analysis of the individual issues above, the alleged errors are either meritless or procedurally barred, or do not meet the Strickland standard for ineffective assistance of counsel. Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit.
For the reasons discussed above, we affirm the lower court's denial of postconviction relief in this case.
It is so ordered.
HARDING, WELLS, PARIENTE, and QUINCE, JJ., concur.
ANSTEAD, C.J., and SHAW and LEWIS, JJ., concur in result only.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993). The Huff hearing requirement was incorporated in Florida Rule of Criminal Procedure 3.851(c). Under this rule, a trial court must conduct a hearing to determine whether an evidentiary hearing is required before ruling on any rule 3.850 motion filed by a death-sentenced prisoner.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
[4] Vining argued that the police had not turned over interview notes in which the gemologist who examined the victim's diamonds stated that he was not paying attention to the victim and the suspect during his appraisal. However, the court found that this precise information had already been revealed to the defendant during the detective's deposition.
[5] These items included: police notes from an interview with the gemologist who appraised the victim's gems; police notes indicating some question as to the exact time the victim left with the suspect; a detective's handwritten notes regarding eyewitness descriptions of the suspect; an employee's statement that the victim had no loose stones with her; an FBI fiber analysis report; and a complete copy of the victim's notebook.
[6] Vining was convicted of kidnapping and aggravated assault in the abduction of a woman in Georgia. The victim of the Georgia crime and the investigating detective both testified during the penalty phase of the trial in this case.
[7] Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that sentencer may not be precluded from considering as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death).
[8] The jury was instructed that "the crime for which John Bruce Vining, Senior is to be sentenced was committed while he was under sentence of imprisonment." This is the standard jury instruction for the under sentence of imprisonment aggravating circumstance and is still in use today. See Fla. Std. Jur. Instr. (Crim.) 109.
[9] Florida Rule of Criminal Procedure 3.851(b) provides that "[a]ny rule 3.850 motion to vacate judgment of conviction and sentence of death shall be filed by the prisoner within 1 year after the judgment and sentence becomes final." In contrast, such motion in a noncapital case must be filed within two years after the judgment and sentence become final. See Fla. R.Crim. P. 3.850(b).
[10] Vining contends that he was not present during the following proceedings: pretrial hearings on a motion to suppress allegedly tainted testimony and evidence, a motion in limine regarding similar fact evidence, a motion to discharge based on the Interstate Agreement on Detainers, and a motion to prohibit in-court identification by witnesses whose memories allegedly had been hypnotically refreshed; numerous off-the-record bench conferences during voir dire and the guilt and penalty phases; and a jury question to the trial court during guilt phase deliberations.