[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 28, 2008
THOMAS K. KAHN
CLERK

No. 07-14536

_____

D.C. Docket No. 02-01709 CV-RWS-1

TED ANTHONY PREVATTE,

Petitioner-Appellant,

versus

JAMES FRENCH, Warden,
ATTORNEY GENERAL THURBERT E. BAKER,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 28, 2008)**

Before WILSON, PRYOR and COX, Circuit Judges.

COX, Circuit Judge:

Petitioner Ted Anthony Prevatte appeals the district court's denial of his 28

U.S.C. § 2254 habeas corpus petition. We affirm the denial of the petition.

# I. FACTUAL BACKGROUND

In June 1974, Prevatte was tried in a Georgia court for the murder and armed robbery of James Rouse, Jr. The State also prosecuted William Jordan for the same crimes, and both men were represented by the same attorneys, Edward Owens and Fred Bishop. The defendants had separate jury trials. Each defendant testified for the other at his trial, both testifying that they knew nothing about the killing and had merely found Rouse's automobile abandoned in Atlanta, stolen it, and driven to North Carolina where they were apprehended.

Petitioner was found guilty of malice murder and armed robbery and sentenced to death on each charge. On appeal, the Georgia Supreme Court affirmed Petitioner's convictions but reversed his death sentences based upon prejudicial statements made by the prosecution during the sentencing phase of the trial. *Prevatte v. State*, 214 S.E.2d 365, 368 (Ga. 1975). Thereafter, Petitioner was re-sentenced to life in prison. In 1991, Petitioner was paroled by the State of Georgia. He did not seek state habeas corpus relief before being paroled.

While still on parole, Petitioner was charged by the State of North Carolina with kidnapping and murder. He was tried and convicted there on two counts of kidnapping and one of first degree murder. He was sentenced to death for the murder conviction and two consecutive terms of imprisonment of thirty years for his

kidnapping convictions. *State v. Prevatte*, 570 S.E.2d 440, 448-49 (N.C. 2002). His Georgia conviction for murder was presented as a "prior violent felony" statutory aggravating circumstance and was one of four aggravating circumstances found by the jury to support its recommendation that Petitioner be sentenced to death. *Id.* at 483, 487. Petitioner's murder conviction and death sentence were affirmed by the North Carolina Supreme Court, and he remains incarcerated in North Carolina awaiting execution.

## II. PROCEDURAL BACKGROUND

In 1996, while incarcerated in North Carolina, Petitioner began pursuing habeas corpus relief regarding his 1974 Georgia convictions. On November 23, 1999, the Georgia state habeas court held an evidentiary hearing during which it heard testimony and received various affidavits into evidence. In August 2000, the state habeas court denied relief. On October 2, 2001, the Georgia Supreme Court denied Petitioner a certificate of probable cause to appeal the denial of his state habeas petition. Petitioner sought certiorari review in the Supreme Court of the United States, and the Court declined to review Petitioner's case.

Petitioner then filed a habeas corpus petition in federal court, urging the district court to set aside his Georgia convictions pursuant to 28 U.S.C. § 2254. In a

3

published opinion, the district court denied relief. *Prevatte v. French*, 459 F. Supp. 2d 1305 (N.D. Ga. 2006). It is this denial that we now review.

## III. STANDARDS OF REVIEW

In examining a district court's denial of a § 2254 habeas petition, "we review questions of law and mixed questions of law and fact *de novo*, and findings of fact for clear error." *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007).

Additionally, review of a final state habeas decision is "greatly circumscribed and is highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). First, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henyard v. McDonough*, 459 F.3d 1217, 1240 (11th Cir. 2006), cert. denied, __U.S. __, 127 S. Ct. 1818 (2007). Additionally, § 2254(d) allows federal habeas relief for any claim adjudicated on the merits in state court only where the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Henyard*, 459 F.3d at 1240.

4

## IV.  ISSUES ON APPEAL

Petitioner presents four issues in his appeal.  First, Petitioner claims that his Sixth Amendment right to counsel was violated because lead counsel at his trial, attorney Owens, had an actual conflict of interest in that he represented both Petitioner and Jordan.  Second, Petitioner argues that his Fifth Amendment right to remain silent and his Fourteenth Amendment due process rights were violated when, at trial, the prosecutor repeatedly referred to Petitioner's post-arrest invocation of his right to remain silent.  Third, Petitioner argues that his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process were violated because women were underrepresented on the master jury list from which the venire for his trial was chosen, in violation of *Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692 (1975).  Finally, Petitioner argues that his counsels' performance was deficient to the extent that he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel.

## V. DISCUSSION

We consider each of Petitioner's arguments in turn, beginning with his conflict of interest claim.

A. Conflict of Interest

Petitioner argues that his trial counsel Owens had an actual conflict of interest in that, pre-trial, Petitioner and Jordan had each told Owens that the other was to blame for Rouse's murder. Petitioner argues that this conflict of interest prevented attorney Owens from rendering Petitioner adequate representation at trial.

At the 1999 habeas hearing, attorney Owens testified that, in his initial interviews with the defendants, Petitioner and Jordan had each pointed the finger at the other for pulling the trigger on Rouse. As the district court found, the only testimony related to these statements came from attorney Owens, who first testified as to them at the habeas hearing and who had suffered a serious and debilitating stroke in the twenty-plus years between the trial and the habeas hearing. And, other facts regarding the existence of a conflict of interest were also presented to the habeas court. Namely, attorney Owens never informed either the trial court or co-counsel Bishop of the alleged statements; neither defendant ever made similar statements to attorney Bishop, despite the fact that he interviewed each of them on multiple occasions; and, the defendants testified at each others' trials, presenting nearly identical stories in support of their alibi defenses.

Having considered all of these facts, the state court found that no factual predicate existed for Petitioners conflict of interest claim. In its order, the state court wrote:

> A review of the total evidence presented convinces this Court that there was no conflict of interest existing at the time this matter was presented to these attorneys to develop trial strategy and to conduct a trial in [sic] behalf of defendant Prevatte on a charge of murder and armed robbery, with the principal defense as presented by the defendants' story being "alibi."

(Respondent's Ex. 13 at 20.)

The district court found that, in order to conclude that no conflict of interest existed, the state court made an implicit factual finding that attorney Owens's testimony was not credible. *Prevatte*, 459 F. Supp. 2d at 1335. The district court then determined that the state court's finding was not unreasonable in light of all the evidence. *Id.* at 1338. Having found no factual predicate for a conflict of interest claim, the district court declined to analyze whether "the state habeas court's decision was either contrary to, or an unreasonable application of, clearly established federal law." *Id.* at 1339-40. Petitioner takes issue with this reasoning by the district court, arguing that the district court was not entitled to infer this implicit factual finding and, alternatively, that, given the evidence, such a finding is unreasonable.

7

While we agree with the district court that the state court did not credit attorney Owens's testimony, we do not find it necessary to rely on inference to find that the state court made an implicit factual finding that attorney Owens's testimony was not credible. The state court made explicit factual findings adequate to support its conclusion that no conflict of interest existed. While the state court did not identify attorney Owens's testimony in its order and label it as incredible, it made factual findings that are contrary to Owens's testimony. The state court found that, "at the time this matter was presented to these attorneys to develop trial strategy and to conduct a trial," the defendants' "story [was] 'alibi.'" (Exhibit 13 at 20.) These findings – that, pre-trial, both of the defendants presented their stories consistently to both attorneys, and that both relied on the defense of alibi – are explicit. These findings alone are sufficient to support the state court's finding that no conflict of interest existed.

As stated above, in habeas proceedings for state prisoners, the federal courts give deference to the state court's findings of fact. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). We find no error in the district court's finding that Petitioner has not rebutted the presumption of correctness and that

8

the state court's finding was not unreasonable.[1] Petitioner is not entitled to relief on this claim.

## B. Comments on Petitioner's Post-Arrest Silence

The district court found that the prosecutor elicited testimony regarding Petitioner's post-arrest silence, in the State's case in chief, as evidence of his guilt. *Prevatte*, 459 F. Supp. 2d at 1370. And, the district court found that the prosecutor made impermissible statements about that silence, including a statement during closing argument that an innocent man would not have requested a lawyer but instead would have talked to police. *Id.* at 1375. The district court held that these statements violated Petitioner's Fifth Amendment right to remain silent, but that testimony about his silence offered for purposes of impeachment did not violate Petitioner's Fourteenth Amendment due process rights because *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976) – holding that a defendant may not be impeached by cross-examination about his failure to talk to police after receiving *Miranda* warnings – was

---

[1] Petitioner argues that the district court applied the wrong standard of review when it required Petitioner to meet the 28 U.S.C. § 2254(e)(1) standard and present clear and convincing evidence that the state court's factual finding was incorrect. Petitioner argues that the 28 U.S.C. § 2254(d)(2) standard should have been applied instead and that he was only required to show that the state court factual finding was unreasonable in light of the evidence. Petitioner argues that the § 2254(d)(2) standard is applicable when, as here, no new evidence was presented to the federal court. He further argues that the 28 U.S.C. § 2254(e)(1) standard applies only where a petitioner is permitted to present new evidence to a federal court.

While we note that the plain language of § 2254 does not provide the basis for such a distinction, we need not decide this issue at this time because we hold that the state court's findings were not unreasonable.

9

decided after Petitioner's conviction was final and was not retroactive to his case. *Prevatte,* 459 F. Supp. 2d at 1369-75.

Significantly, the district court found that the constitutional violations were harmless because the other evidence of petitioner's guilt "was simply overwhelming." *Id.* at 1378. The district court applied the harmlessness standard announced in *Brecht v. Abrahamson*, namely, whether the error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht,* 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). After recapping the evidence of Petitioner's guilt separate and apart from his post-arrest silence, the district court concluded:

> the evidence of Petitioner's post-arrest silence, insofar as it may have been considered as evidence of guilt, was of little significance and certainly was not the touchstone of the state's case against Petitioner. When this overwhelming evidence of guilt and the relatively minor role the evidence of Petitioner's silence played are considered against the prejudice to Petitioner, the Court concludes that the errors resulting from the prosecutor's references to Petitioner's post-arrest silence did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S. Ct. 1710. While the Court in no way seeks to minimize the errors that occurred, the Court is confident that those errors did not operate to sway the jury in favor of a verdict of guilty.

*Prevatte*, 459 F. Supp. 2d at 1379. Therefore, the district court denied Petitioner relief on this claim.

Petitioner argues that the district court erred when it held that *Doyle* does not apply to Petitioner's trial because Petitioner had not been sentenced at the time *Doyle* was decided, and therefore his judgment was not final pre-*Doyle*. Petitioner also argues that the district court should not have performed a harmlessness review as Respondents did not argue that the errors were harmless. And, Petitioner argues that the district court applied the wrong standard in its harmlessness review, as it should have applied cases that took *Doyle* into account.

We hold that the district court was within its powers in performing a sua sponte harmless error review. *See Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722 (citing the federal harmless-error rule, 28 U.S.C. § 2111, and stating that habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.") (internal quotations omitted); 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record <u>without regard to errors or defects which do not affect the substantial rights of the parties</u>.") (emphasis added); *see also Horsley v. State of Ala.*, 45 F.3d 1486, 1492 n.10 (11th Cir. 1995) ("[W]e have the discretion to overlook a failure to argue harmlessness and to undertake *sua sponte* the

11

task of considering harmlessness."). And, the court applied the correct standard in determining whether the statements regarding Petitioner's silence were harmless. *See Hill v. Turpin*, 135 F.3d 1411, 1417-1419 (11th Cir. 1998) (applying *Brecht* standard to analyze whether *Doyle* violation was harmless).

We now consider harmlessness – a question of law – de novo. For purposes of our analysis, we assume, without deciding, that *Doyle* should apply to Petitioner's case. We therefore assume, again without deciding, that all of the statements made at Petitioner's trial regarding his post-arrest silence violated his constitutional rights and ask whether those statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S. Ct. at 1714. We conclude that they did not.

We are, as was the district court, overwhelmed by the evidence of Petitioner's guilt, separate and apart from any evidence of his post-arrest silence. The district court summarized that evidence:

> Petitioner and Jordan were arrested in North Carolina less than 24 hours after the victim was killed. At the time they were arrested, they were driving the victim's car. During a high-speed police chase leading up to their eventual capture which included an exchange of gunfire with the pursuing officers, a shotgun was tossed from the vehicle. [footnote omitted.] This was the same type of weapon used to kill the victim. The shotgun shells found in their possession were of the exact brand and type as that discovered at the scene of the killing, and the state's expert

12

testified that the shell found at the scene had been fired from the shotgun in Petitioner's possession. Petitioner and Jordan had in their possession the victim's wallet and briefcase, and Jordan was wearing the victim's watch. There were photographs of Petitioner and Jordan standing in front of the victim's car holding various weapons, including a shotgun, which Petitioner and Jordan explained as "just clowning around" and as a "souvenir." Finally, there was testimony from Ms. Hamrick placing Petitioner, Jordan, and the victim at a bar which was in close proximity to where the victim was killed, but a significant distance from the location where Petitioner claimed to have discovered and stolen his vehicle.

*Prevatte*, 459 F. Supp. 2d at 1378-79. We are convinced that this is not a case, like *Hill*, where there were "significant weaknesses in the state's case against [the Defendant]." *Hill*, 135 F.3d at 1417. We hold that any error arising from statements regarding Petitioner's silence – whether those statements were used in the prosecution's case in chief or to impeach Petitioner – was harmless. Therefore, the district court properly concluded that Petitioner is not entitled to relief on this claim.

C. Underrepresentation of Women in the Jury Pool

Respondent does not take issue with Petitioner's contention that women were underrepresented in the jury pool from which Petitioner's trial jury was selected. And, the parties agree that *Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692 (1975), held that the jury pool from which a petit jury is drawn must not systematically exclude distinctive groups, including women. But, the parties disagree as to whether

*Taylor* applies to Petitioner's jury. Petitioner asks this court to find that *Taylor* does apply and to grant him relief on that basis. Respondent argues that *Taylor* (decided the year after Petitioner's trial) is not retroactive and that Petitioner is, therefore, not entitled to habeas relief on this claim.

The district court denied Petitioner relief on this claim, finding that *Daniel v. Louisiana*, 420 U.S. 31, 95 S. Ct. 704 (1975), decided six days after *Taylor*, explicitly answers the question of whether *Taylor* is retroactive. *Prevatte*, 459 F. Supp. 2d at 1323. In *Daniel*, the Supreme Court instructed that *Taylor* should not apply retroactively to convictions where juries were empaneled before *Taylor* was announced. 420 U.S. at 32, 95 S. Ct. at 704. The district court considered and rejected Petitioner's arguments that Supreme Court cases decided since *Daniel* have changed the retroactivity analysis and implicitly overruled its holding regarding *Taylor*. *Prevatte*, 459 F. Supp. 2d at 1321-23. The district court held that, until the Supreme Court explicitly overrules *Daniel*, that case must be followed by courts of this circuit. *Id.*

We agree with the district court. Pursuant to *Daniel*, *Taylor* does not apply retroactively to cases like Petitioner's where the jury was empaneled before *Taylor* was announced. Petitioner is not entitled to relief on this claim.

14

D.  Ineffective Assistance of Counsel

Petitioner argues that his counsel was ineffective at trial.  More specifically, he contends on this appeal that counsel failed to adequately prepare for trial by: (1) failing to consult an independent ballistics expert to challenge the state's ballistics evidence, and (2) failing to interview Ms. Hamrick, a witness who, on cross-examination, testified (to defense counsel's surprise) that she had seen the defendants, on the evening of the murder, in the Holiday Inn bar near the location where Rouse's body was found.  Petitioner also contends that his counsel was ineffective in that he failed to object to the prosecutor's comments on Petitioner's post-arrest silence.

The state habeas court found that Petitioner's ineffective assistance claim had no factual basis and denied relief.  (Exhibit 13 at 20-21.)  The district court reviewed each of Petitioner's arguments as to how his counsel was ineffective and concluded that, to the extent the state court addressed the claims of ineffectiveness, its denial of those claims was not unreasonable.  And, the district court found that those claims not addressed by the state court do not warrant relief because the facts do not demonstrate that Petitioner was prejudiced by counsel's actions.  *Prevatte*, 459 F. Supp. 2d at 1346-1355.

We agree with the district court.  For the reasons stated in the district court's opinion, Petitioner's claims of ineffective assistance do not merit relief.

15

## VI.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's denial of the petition for habeas corpus.

AFFIRMED.