[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12854

_____

D. C. Docket No. 04-01206-CV-J-33

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 22, 2009
THOMAS K. KAHN
CLERK

RICHARD BARRY RANDOLPH,

Petitioner-Appellant,

versus

WALTER A. MCNEIL,
BILL MCCOLLUM,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 22, 2009)

Before EDMONDSON, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Richard Randolph, a prisoner on Florida's death row, petitioned for relief in federal district court pursuant to 28 U.S.C. § 2254. The petition was denied in a painstaking and comprehensive order of more than 160 pages. Seeing no reversible error, we affirm the District Court's denial of Randolph's petition.

## I. Background

In 1989, a Florida state jury convicted Randolph of first-degree murder, armed robbery, sexual battery, and grand theft of a motor vehicle. The jury recommended the death penalty; the trial court sentenced Randolph to death. The state supreme court affirmed the conviction and sentence on direct appeal. Randolph's post-conviction petitions in state court were denied. The District Court denied his section 2254 habeas petition and denied him a Certificate of Appealability. We granted a Certificate of Appealability on four issues: (1) ineffective assistance of counsel, (2) improper juror removal, (3) the presentation of non-statutory aggravating factors to the jury, and (4) prejudicial closing arguments.

2

## II. Discussion

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), "our review is greatly circumscribed and is highly deferential to the state courts." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). We presume all factual determinations by the state court to be correct; the petitioner has the burden of rebutting that presumption with clear and convincing evidence. Id. We will only grant habeas relief on a claim adjudicated on the merits in state court if the state court decision was contrary to clearly established federal law (as declared by pre-existing Supreme Court decisions) or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Id.

To obtain relief for ineffective assistance of counsel, Randolph must show two things. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). If Randolph can show that his lawyer's representation fell below that standard, he must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. " Id. at 2068. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to

3

address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 2069.

Randolph contends that his lawyer was ineffective during the guilt and penalty phases of his trial. For the guilt phase of trial, Randolph says that two of his lawyer's acts were so bad as to be a violation of the minimum standard of conduct: (1) conceding guilt when Randolph had already confessed to the police, and (2) not raising a voluntary intoxication defense. The state courts determined that Randolph's trial lawyer acted reasonably. We cannot say this decision is contrary to clearly established federal law. [1]

For the penalty phase, Randolph contends that his counsel's alleged failure to investigate properly Randolph's history was so unreasonable as to be ineffective. To support this contention, Randolph points to Wiggins v. Smith, 123 S. Ct. 2527 (2003). We will assume for argument's sake that defense counsel performed unprofessionally and that Wiggins applies.

Randolph does not allege, much less present, evidence that was not presented to the jury. The substance of his concerns came out at the trial. He mainly argues about who -- he would have preferred more friends and family as

---

[1]Randolph does raise additional grounds of ineffectiveness during the guilt phase, but he only makes conclusory assertions in his brief. These assertions are insufficient for us to conclude that the state courts were legally required to overturn his conviction or sentence.

witnesses and less use of an expert -- presented what evidence at his trial and about how many times that evidence was presented to the jury. Randolph has not pointed to additional information that may have changed the trial's final outcome; he cannot bear his burden of proof. Given the evidence that did go to the jury, the state courts' conclusion that no reasonable probability has been shown that, but for Randolph's lawyer's lack of investigation, the trial court would have failed to sentence Randolph to death is a reasonable application of clearly established federal law.

Randolph also contends that the trial court erred in removing a juror from the jury pool. The trial court struck for cause a juror who answered questions inconsistently when asked about her feelings on the death penalty. Some of her answers made it appear that she could impose the death penalty, and some of her answers made it appear that she was unable to apply the law faithfully.

Jurors cannot be excluded "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon v. Illinois, 88 S. Ct. 1770, 1777 (1968). A juror may be excluded if the juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Gray v. Mississippi, 107 S. Ct. 2045, 2051 (1987) (internal quotation marks

5

omitted). A juror's views on the death penalty are included in this assessment. Id.

The Florida Supreme Court addressed this issue in Randolph's direct appeal and correctly set out the proper law. Randolph is essentially asking the federal courts to overturn the state trial court's determination that the juror was not credible when she said she could impose the death penalty.

Randolph's trial lawyer conceded that the juror in question gave alternate views on her ability to apply the law properly. Randolph, in this appeal, presents no evidence beyond the trial transcript that the state trial judge's -- who had the benefit of hearing and viewing the pertinent juror's testimony and demeanor -- credibility determination was inaccurate. Randolph does not meet the clear and convincing standard required for us to disturb the state court credibility determination.

Randolph's third claim involves whether the jury considered lack of remorse: an improper non-statutory aggravating factor in Florida. The prosecutor, at the guilt phase, asked Randolph's girlfriend whether Randolph showed remorse after the crimes. Randolph says this question injected a non-statutory aggravating factor into his case, violating his constitutional right to due process.

We need not consider whether this isolated testimony was a constitutional violation if the violation was harmless. See Hodges v. Att'y Gen., State of Fla.,

506 F.3d 1337, 1343 (11th Cir. 2007). "And harmlessness is to be judged under the Brecht v. Abrahamson standard of substantial and injurious effect." Id. (internal citation omitted). Randolph must show that his girlfriend's statement on his lack of remorse had a "substantial and injurious effect or influence . . . ." Brecht v. Abrahamson, 113 S. Ct. 1710, 1722 (1993). Randolph points only to one reference to his lack of remorse, in a trial with much other evidence, including -- by the time of sentencing -- evidence that Randolph did regret what had happened.

When weighed against all the evidence of the four statutory aggravating factors properly considered by the jury, that a substantial and injurious effect or influence arose from Randolph's girlfriend's single statement is by no means clear. We cannot overturn the state court's decision because it is not contrary to or an unreasonable application of clearly established federal law.

During closing arguments, the prosecutor made a remark about putting a family's old pet to sleep. No objection was made. Randolph says that the remark diminished the jury's sense of responsibility, that the remark rose to the level of prosecutorial misconduct, and that the lawyer representing him on direct appeal was ineffective in not advancing this ground of supposed misconduct on appeal.

To prevail, Randolph must show that the comment "infected the trial with such unfairness that the conviction constitutes a denial of due process."

7

Whisenhant v. Allen, 556 F.3d 1198, 1207 (11th Cir. 2009). In context of the prosecutor's whole argument, state courts concluded that the remark did not diminish the jury's sense of responsibility. In this case, the prosecutor's statement did not implicate Randolph's constitutional rights. Randolph fails to present argument or evidence that would justify our overturning the state court conclusion that the statement did not infect the trial with unfairness.

About Randolph's lawyer effectiveness on the direct appeal, the ground lacked merit; and, given that the error was not fundamental, we accept the state courts' conclusion that the appellate lawyer was not ineffective. The state court decision was not contrary to or an unreasonable application of clearly established federal law.

III. Conclusion

We approach this appeal with deference for the state court judgments which we see as objectively reasonable in this case both in law and in fact. After a full trial, state post-conviction proceedings, and district court decision with a complete opinion, we conclude that there are no reversible errors in the application of clearly established federal law, no misapplication of the facts, and no unreasonable

8

determinations of fact sufficient to grant Randolph's petition. Given the AEDPA conditions for a grant of federal relief from a state conviction, we have discovered no reversible error.

AFFIRMED.