[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2010
JOHN LEY
CLERK

_____

No. 07-15681

_____

D. C. Docket No. 04-01092-CV-GAP-DAB

JOHN B. VINING,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 28, 2010)**

Before DUBINA, Chief Judge, EDMONDSON and PRYOR, Circuit Judges.

PER CURIAM:

John Vining ("Petitioner") appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, in state court, was convicted of first-degree murder and sentenced to death. The details of Petitioner's case are set out in the Florida Supreme Court's opinion on his direct appeal. See Vining v. State ("Vining I"), 637 So. 2d 921 (Fla. 1994). The Florida Supreme Court affirmed his conviction and later denied his application for post-conviction relief.

After exhausting remedies in state court, Petitioner sought a writ of habeas corpus in the district court. He raised more than two dozen claims and subclaims, and the district court denied his request for relief on each of them. After the district court rejected his petition, we granted a Certificate of Appealability on two issues:

> (1) Whether Petitioner was denied a fair and impartial tribunal in violation of Gardner v. Florida, 430 U.S. 349 (1977), because the state trial court considered extra-record information
>
> (2) Whether Petitioner's right to assistance of counsel during the guilt phase and the penalty phase has been violated.

Collateral review of convictions in a state court are subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254. AEDPA provides that no federal court may grant a writ to a person

2

in custody pursuant to the judgment of a state court unless the state court

adjudication

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Green v. Nelson, 595 F.3d 1245, 1248 (11th Cir. 2010) (quoting 28 U.S.C. §

2254(d)).  Because we see no reversible error in the decision of the district court,

we affirm.

I.  Impartial Tribunal

Petitioner argues that he was denied a fair trial because the state trial judge

improperly considered extra-record information.  See Gardner v. Florida, 97 S. Ct.

1197, 1207–08 (1977) (White, J., concurring) (declaring invalid a death sentence

where the trial judge considered "secret information relevant to the 'character and

record of the individual offender'" and did not reveal this information to the jury)[1];

for background on Petitioner's claim, see Vining v. State ("Vining II"), 827 So. 2d

---

[1]No opinion commanded a majority in Gardner, but Justice White's concurrence represents the holding in that case.  See O'Dell v. Netherland, 117 S. Ct. 1969, 1976 (1997) (recognizing Justice White's view as the rule of Gardner).

201, 209-10 (Fla. 2002).  The state trial court judge viewed extra-record records

and source materials, read depositions not admitted into evidence, spoke to outside

experts on trial matters, and conducted a personal "view" of locations pertinent to

the case.  Id. at 209.

On direct appeal, the Florida Supreme Court concluded that Petitioner had

waived his Gardner claims, because his trial counsel failed to object after the trial

judge disclosed in two letters that the judge had examined extra-record

information.  Vining I, 637 So. 2d at 927.  On collateral review, the Florida

Supreme Court expressed doubt "whether a Gardner violation occurred in this case,

but even if it did, any error was harmless."  Vining II, 827 So. 2d at 210.[2]  The

district court, applying Delap v. Dugger, 890 F.2d 285 (11th Cir. 1989), agreed that

any Gardner error was harmless and concluded that the Florida Supreme Court's

conclusions were not contrary to, or an unreasonable application of, United States

Supreme Court precedent.

Although the district court seemed to apply Delap's "harmless beyond a

reasonable doubt" standard, federal courts -- on collateral review -- should apply

---

[2]What harmless error standard the Florida Supreme Court applied is not entirely clear,
but both precedents it cited for harmlessness were decided under, or depended on, the "harmless
beyond a reasonable doubt" standard.  See Vining II, 827 So. 2d at 209–10 (citing Consalvo v.
State, 697 So. 2d 805, 818 (Fla. 1996) (adjudicating harmless errors under the "harmless beyond
a reasonable doubt" standard) and Lockhart v. State, 655 So. 2d 69, 73-74 (Fla. 1995)
(adjudicating harmless error under an injury to substantial rights test)).

4

the "actual prejudice" standard of <u>Brecht v. Abrahamson</u>, 113 S. Ct. 1710 (1993). We do so even if the state courts -- as well as, in this case, the district court -- applied a different harmless error standard. <u>Fry v. Pliler</u>, 127 S. Ct. 2321, 2325–27 (2007); <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1253 n. 20 (11th Cir. 2007) ("[W]e employ the more deferential <u>Brecht</u> standard even where the state court did not apply the <u>Chapman</u> standard of proof 'beyond a reasonable doubt that the error complained of did not contribute to the verdict.'").

Brecht requires that we determine "whether [an] error 'had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht</u>, 113 S. Ct. at 1722. In other words, "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Id.</u> Harmlessness is a question of law that we review <u>de novo</u>. <u>Prevatte v. French</u>, 547 F.3d 1300, 1305 (11th Cir. 2008).

Although we apply <u>Brecht</u>, we agree with the district court and the Florida Supreme Court's conclusion that any <u>Gardner</u> error was harmless.[3]

---

[3]While <u>Brecht</u> and <u>Fry</u> describe a prejudicial impact on the jury, we have applied the harmless error rule in cases where the judge may accept or reject a jury recommendation, as was the situation in Petitioner's case. See <u>Randolph v. McNeil</u>, 590 F.3d 1273, 1277–78 (11th Cir. 2009) (reviewing admission of evidence during sentencing phase for <u>Brecht</u> harmlessness in a case where the judge ultimately chose the defendant's sentence); <u>Lamarca v. Sec'y, Dep't of Corr.</u>, 568 F.3d 929, 943–44 (11th Cir. 2009) (concluding that trial court's admission of evidence during guilt phase was harmless under <u>Brecht</u>); <u>Jennings v. McDonough</u>, 490 F.3d

5

The state trial judge testified at a post-conviction evidentiary hearing that he had examined depositions, medical examiner reports, probate records, and a book on hypnosis; that he had spoken with at least two outside experts; and that he had traveled to locations pertinent to the trial. But the judge also testified that he did not rely on this material in any way, and that someone -- he was unable to recall whom -- had discussed the information contained in the medical examiner's reports during trial. The allegedly damning information in the depositions from Petitioner's earlier trial in Georgia was testified to in open court -- testimony trial counsel admitted was "devastating."[4]

More important, no extra-record materials that the judge viewed were presented to the jury during the guilt or penalty phases. The jury was unaware of the documents the judge examined, and it did not accompany him on his "view" of certain pertinent locations -- the jury's verdict was reached independently of the trial judge's personal investigation. Accordingly, his consideration of extra-record materials had no "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 113 S. Ct. at 1722.

---

1230, 1251–52 (11th Cir. 2007) (upholding Florida death sentence based, in part, on an improper aggravating factor when other aggravators were properly found by the jury and applied by the sentencing judge).

[4]The trial judge considered the deposition of another person from the prior Georgia trial, Ferguson, but disclosed this fact to counsel.

Petitioner claims that the trial judge's pre-trial familiarity with hypnosis and his conversation with a psychologist about hypnosis were not harmless. Before the trial, the judge did not disclose his prior experience with hypnosis. Later, at the hearing on a motion to suppress testimony from witnesses who Petitioner argued had been hypnotized, the trial judge did not disclose that he had consulted a text on hypnosis after mentioning to a psychologist-friend that the issue of hypnotism had come up in Petitioner's case. The trial judge concluded that the proposed witnesses had not been "hypnotized" as that term is defined in Florida caselaw, denied Petitioner's motion to suppress, and admitted the witnesses' testimony. The Florida Supreme Court concluded that, regardless of the trial judge's personal experience, independent evidence showed that the witnesses were not hypnotized. Vining I, 637 So. 2d at 926 (citing Stokes v. State, 548 So. 2d 188, 190 (Fla. 1989) (defining hypnosis as an "altered state of awareness or perception" during which a subject is placed in an artificially induced state of sleep or trance)). We conclude that the trial judge's experience with hypnosis, conversations with a psychologist, or familiarity with a book on the subject did not influence the jury or prejudice the Petitioner because, according to Florida's law, the witnesses' testimony would have been admissible in any event.

In the light of Brecht, the state trial judge's consideration of outside

7

materials, then, did not "substantial[ly] and injurious[ly]" affect the jury's

consideration of the facts in concluding that Petitioner was guilty.

Nor did the extra-record information affect the penalty phase. The trial

judge testified at the state post-conviction hearing that he had not been influenced

by outside materials, including the depositions and medical records. The jury--

with no knowledge of the trial judge's personal investigation -- voted 11-1 in favor

of the death penalty. On a special verdict form, the jury found the same four

statutory aggravating factors the trial judge also found, and three of those

aggravators were upheld on direct appeal.[5] Unlike Gardner, where the trial judge

rejected a jury's recommendation of life imprisonment and sentenced a defendant

to death based on extra-record information, the trial judge in Petitioner's case

accepted the jury's recommended sentence. Compare Gardner, 97 S. Ct. at

1201–02 (describing trial judge's rejection of jury's recommended verdict based

on his examination of pre-sentence report not available to jurors) with Vining II,

827 So. 2d at 210 ("[The] information relied upon in the sentencing order to

support the aggravating factors was otherwise proven at trial. And . . . given the

_____

[5]The jury found that "1) the crime was committed by a person under a sentence of imprisonment; 2) the defendant was previously convicted of a felony involving the use of violence to the person; 3) the crime was committed during a robbery; and 4) the homicide was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." Vining I, 637 So.2d at 923–24 (citations and footnotes omitted). Although the Florida Supreme Court struck the "cold, calculated, and premeditated" aggravator, it upheld the jury's findings on the other three. Id. at 928.

overwhelming evidence supporting the aggravating factors, [any] error did not injuriously affect the defendant's substantial rights.") (internal quotation marks and alterations omitted). At the post-conviction evidentiary hearing, the trial judge testified that the outside materials were proved by other sources at trial -- an explanation the Florida Supreme Court credited on collateral review. See id.

Three statutory aggravating factors were proved beyond a reasonable doubt, and the jury reached the same conclusions on these aggravators as the trial judge, even though they had no access to extra-record materials. See Vining I, 637 So. 2d at 927–28. As such, Petitioner could only demonstrate prejudice if he could show that the extra-record information influenced the trial judge's sentence. But the presence of the three proved aggravating factors, the minimal mitigating evidence, the jury's 11-1 recommendation of a death sentence, and the evidence amassed against Petitioner convinced the Florida Supreme Court -- reasonably, we believe -- that the trial judge would still have sentenced Petitioner to death, even if no Gardner violation had occurred. See also Randolph v. McNeil, 590 F.3d 1273, 1277 (11th Cir. 2009) (contrasting a single negative statement by a defendant's girlfriend against the weight of "all the evidence of the statutory aggravating factors properly considered by the jury" and finding no substantial or injurious effect under Brecht); Delap, 890 F.2d at 302–03 (describing the structure of

9

Florida's death penalty sentencing scheme and noting that the "trial judge's consideration of the statutory aggravating factors could not have been affected by [reviewing outside information] as all of the factors relate either to the crime itself or to the defendant's prior criminal record").

Petitioner also contends that the state trial judge -- relying on extra-record materials -- improperly rejected a nonstatutory mitigating factor, namely that the Petitioner was a good father. But Petitioner has offered no evidence showing that the trial judge considered outside information before refusing to apply the mitigator. Instead, he argues that the trial judge must have considered extra-record information because the judge never stated that he had not considered such outside information, and because the only testimony on Petitioner's quality as a father was favorable. In fact, the trial court could have concluded that Petitioner's criminal record and his ex-wife's testimony that he had trouble with alcohol were sufficient to cast doubt on Petitioner's quality as a good father. Petitioner cannot rely on a supposed inference drawn from silence to carry his burden of establishing error and prejudice. And we conclude that any error in rejecting this mitigating factor was harmless. See also Trotter v. Sec'y, Dep't Of Corr., 535 F.3d 1286, 1289–93 (11th Cir. 2008) (affirming denial of petition for post-conviction relief in death penalty case where the Florida trial court found four statutory aggravators but also

10

two statutory and several nonstatutory mitigators); <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1324 n.22 (11th Cir. 1998) (holding harmless trial court's alleged failure to consider a nonstatutory mitigating factor in the light of the "aggravating circumstances and facts of this case").

We conclude that Petitioner has not demonstrated "actual prejudice" as explained in <u>Brecht</u>, and therefore his <u>Gardner</u> claim was properly denied as a basis for post-conviction relief.

## II. Ineffective Assistance of Counsel

Petitioner asserts that he was denied effective assistance of counsel during the guilt and penalty phases of trial. <u>Strickland v. Washington</u>, 104 S. Ct. 2052 (1984), governs the consideration of a claim for ineffective assistance of counsel. "To establish an ineffective assistance of counsel claim under the Sixth Amendment [as explained in <u>Strickland</u>], '[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.'" <u>Williams v. Allen</u>, 598 F.3d 778, 788 (11th Cir. 2010).  If a petitioner cannot prove both elements of the <u>Strickland</u> inquiry, his ineffective assistance of counsel claim cannot succeed.  <u>Maharaj v. Sec'y for Dep't of Corr.</u>, 432 F.3d 1292, 1319 (11th

11

Cir. 2005). And because Petitioner's claim is governed by AEDPA's requirements on deference to state court adjudications, to get relief he must "satisfy the elements of the Strickland standard, [and] also show that the State 'court applied Strickland to the facts of his case in an objectively unreasonable manner.'" Williams, 598 F.3d at 789.

Counsel's performance was deficient if it "fell below an objective standard of reasonableness." Strickland, 104 S. Ct. at 2064. A petitioner demonstrates Strickland prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. We conclude that Petitioner cannot demonstrate either deficient performance or prejudice in his Strickland claims.

Petitioner mainly argues that counsel's failure to object to the trial judge's consideration of extra-record material or to move for recusal of a "manifestly bias[ed]" judge[6] deprived him of effective assistance of counsel. During the guilt phase of the trial, the trial judge did consider extra-record and ex parte materials, but none of the information gleaned from the judge's private investigations altered the strong evidence pointing to Petitioner's culpability.[7] Nor did it influence the

_____

[6]There is no evidence of personal bias, that is, extra-judicial bias, of the trial judge against Petitioner. The evidence of bias is the supposed Gardner violation.

[7]This record evidence includes identification testimony, Petitioner's conduct around the time of the crime, and other testimony during the penalty phase that defense counsel admitted

12

jurors who never had access to information beyond the record. We are not persuaded that the trial would have come out differently had counsel raised Gardner objections or moved for a recusal, and we agree with the district court that the Florida Supreme Court's decision was not contrary to federal law or unreasonable given the facts.

Petitioner notes that trial counsel failed to challenge two witnesses' identification of Petitioner as being with the victim on the day of her death. He contends that these witnesses had been hypnotized and that counsel should have refreshed the witnesses' recollections and impeached their testimony. He also argues that trial counsel should have objected to the judge's familiarity with hypnosis and to the admission of "hypnotized" testimony and argues that counsel should have cross-examined witnesses about whether they had been hypnotized. Even if we accepted that counsel may have been deficient by not objecting to the witnesses' testimony or more thoroughly cross-examining the witnesses themselves, we accept the Florida Supreme Court's view as reasonable: no reasonable probability existed that the trial would have come out differently.[8] "[T]he record clearly supports the state habeas court's [and the district court's]

_____

was "devastating" to Petitioner's case.

[8]Florida's Supreme Court concluded that no witness had been hypnotized in Petitioner's case.

13

determination that there is no reasonable probability that additional cross-examination, impeachment, or expert testimony [on this issue] would have altered the outcome of [Petitioner's] trial." Boyd v. Allen, 592 F.3d 1274, 1309 (11th Cir. 2010).

The failure to object to the state trial court's decision to reject the "good father" mitigator also does not rise to the level of Strickland prejudice. Petitioner offers no evidence showing that the trial court examined outside information in rejecting the mitigating factor; he has failed to meet his evidentiary burden for a basis for a valid objection. But even if he offered proof that the trial judge had used extra-record evidence in this way, mitigating evidence need only be considered, not relied upon. Even if the trial judge had applied the mitigator, it is reasonable to conclude that the he would still have sentenced Petitioner to death based on the presence of aggravating factors. Schwab v. Crosby, 451 F.3d 1308, 1329 (11th Cir. 2006).[9] Again, Petitioner does not meet the burden of demonstrating prejudice under Strickland, much less the unreasonableness of the

_____

[9]Petitioner claims that counsel was ineffective because she failed to introduce mitigating evidence showing that Petitioner's mother was an alcoholic, that Petitioner was a good student and son, that Petitioner saved his ex-wife's life, and that Petitioner was himself an alcoholic. But the record refutes this argument: at sentencing, counsel produced evidence related to all of these mitigating factors. It was no unreasonable application of federal law for the Florida Supreme Court to determine that Petitioner's argument on this point had no merit.

14

state court decisions under AEDPA.[10]

The Florida Supreme Court and the district court both rejected Petitioner's argument that counsel was ineffective because she did not adequately investigate and present evidence on Petitioner's conviction in Georgia. The Florida Supreme Court's determination that counsel was not deficient in this matter -- as she had objected to witness testimony, limited the testimony through objections, and moved for a mistrial -- was neither an unreasonable application of federal law nor was it unsupported by facts in the record.

III. Conclusion

We cannot say that Florida's Supreme Court has decided pertinent law or facts unreasonably, or in a way that is contrary to clearly established federal law. We have considered all of Petitioner's claims on ineffective assistance of counsel, and we conclude that he has not demonstrated that he is entitled to relief. We have also determined that any Gardner error was harmless in the light of Brecht and of

---

[10]Petitioner raised several other ineffective assistance claims in the state and district courts. Petitioner did not address those other claims in his brief. Therefore, we consider the other Strickland claims abandoned. See Gary v. Hall, 558 F.3d 1229, 1249 (11th Cir. 2009) (concluding that habeas petitioner's Strickland claims were abandoned because "habeas counsel did not address the ineffective assistance of counsel claims" in the initial brief).

15

our duty on collateral review to ascertain if Petitioner was "actually prejudiced" during his trial. Because Petitioner has demonstrated no basis for post-conviction relief, the district court's denial of his petition for a writ of habeas corpus is AFFIRMED.