WINDOM, Presiding Judge, concurring in part and dissenting in part.
*1117 I agree with the majority's decision to affirm Nicholas Noelani D. Smith's capital-murder convictions. I, however, disagree with its decision to reverse his sentences of death. I agree with the majority that the State erroneously presented testimony from Frances Curry and Rena Curry regarding their characterization of Smith, his crime, and the appropriate punishment; however, these errors did not rise to the level of plain error. Rule 45A, Ala. R. Crim. P. Therefore, I respectfully dissent.
Initially, it is important to note that "[t]he standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal." Hall v. State, 820 So.2d 113, 121 (Ala. Crim. App. 1999). "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n.14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) ). As the Supreme Court of the United States has noted, the appellant's burden to establish plain error "is difficult, 'as it should be.' " Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83, n.9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) ).
To rise to the level of plain error, the alleged error must be a "particularly egregious error[ ]," Frady, 456 U.S. at 163, 102 S.Ct. 1584, and it "must be obvious on the face of the record," Ex parte Walker, 972 So.2d 737, 753 (Ala. 2007). See also Young, 470 U.S. at 15, 105 S.Ct. 1038 ("The [plain-error] Rule authorizes the Courts of Appeals to correct only particularly egregious errors." (citations and quotations omitted)). Only an error that is "so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings," rises to the level of plain error. Ex parte Womack, 435 So.2d 766, 769 (Ala. 1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981) ). See also Ex parte Price, 725 So.2d 1063, 1071-72 (Ala. 1998) (holding that appellate courts should not reverse a conviction or sentence under the plain-error doctrine unless the error is "so egregious ... that [it] seriously affects the fairness, integrity or public reputation of judicial proceedings"); Puckett, 129 S.Ct. at 1429 (explaining that appellate courts should exercise their discretion and reverse a waived error under the plain-error doctrine "only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" ' " (quoting United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting in turn, United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) )). If the propriety, legality, or correctness of a claimed error is "subject to reasonable dispute," then the appellant cannot establish plain error. Puckett, 556 U.S. at 135, 129 S.Ct. 1423 (citing Olano, 507 U.S. at 734, 113 S.Ct. 1770 ) (holding that appellate courts cannot find plain error unless "the [alleged] legal error [is] clear or obvious, rather than subject to reasonable dispute").
Even an obvious, indisputable error will not " ' "rise to the level of plain error, *1118 [unless it] ... not only seriously affect[ed] a defendant's 'substantial rights,' but ... also ha[d] an unfair prejudicial impact on the jury's deliberations." ' " Ex parte Brown, 11 So.3d 933, 938 (Ala. 2008) (quoting Ex parte Bryant, 951 So.2d 724, 727 (Ala. 2002), quoting in turn Hyde v. State, 778 So.2d 199, 209 (Ala. Crim. App. 1998) ). Although the "failure to object does not preclude [appellate] review in a capital case, it does weigh against any claim of prejudice." Ex parte Kennedy, 472 So.2d 1106, 1111 (Ala. 1985) (citing Bush v. State, 431 So.2d 563, 565 (1983) ). Further, the appellant has the burden to establish that an alleged error had an unfair prejudicial impact on the jury's deliberations. See Ex parte Walker, 972 So.2d at 752 (recognizing that the appellant has the burden to establish prejudice relating to an issue being reviewed for plain error). Accordingly, to obtain a reversal based on a waived error, the appellant must establish that the alleged error affected the outcome of the trial. See Thomas v. State, 824 So.2d 1, 13 (Ala. Crim. App. 1999), overruled on other grounds, Ex parte Carter, 889 So.2d 528 (Ala. 2004).
Under the unique facts of this case, Smith has not, and cannot, meet his burden to show that Frances Curry's and Rena Curry's testimony in the penalty phase had an unfair prejudicial impact on the jury's deliberations or affected the outcome of the penalty phase of his trial. As detailed by the majority's opinion, Smith's crime was particularly heinous and overwhelmingly aggravated. Smith, a violent felon who was under a sentence of imprisonment at the time, accompanied his accomplices to Thompson's home and kidnapped him. See §§ 13A-5-49(1) - (2), (4), Ala. Code 1975. After kidnapping Thompson, Smith and his accomplices tortured him both physically and mentally while robbing him. § 13A-5-49(4) and (8), Ala. Code 1975. When Thompson was of no further use to Smith, Smith cut Thompson's throat with a serrated steak knife. While Thompson's lungs and stomach filled with his own blood, one of Smith's accomplices stabbed Thompson in the chest multiple times. Thompson was then thrown to the bottom of an embankment where he was left to die. Smith's character, his past, and the facts of his crime established five aggravating circumstances: 1) that he was under a sentence of imprisonment, see § 13A-5-49(1), Ala. Code 1975; 2) that he had been previously convicted of a felony involving the use or threat of violence to a person, see § 13A-5-49(2), Ala. Code 1975; 3) that his capital offense was committed while he was engaged in a kidnapping, see § 13A-5-49(4), Ala. Code 1975; 4) that his capital offense was committed while he was engaged in a robbery, see § 13A-5-49(4), Ala. Code 1975; and 5) that his capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses, see § 13A-5-49(8), Ala. Code 1975. Although, as the majority notes, Smith presented some evidence in mitigation, the force of the aggravating circumstances in this case mightily outweighed that mitigating evidence. See Schwab v. Crosby, 451 F.3d 1308, 1330 (11th Cir. 2006) (holding that a penalty-phase error does not require reversal when the aggravating circumstances far outweigh the mitigating circumstances); Randolph v. McNeil, 590 F.3d 1273, 1277 (11th Cir. 2009) ; Vining v. Secretary of Dep't of Corr., 610 F.3d 568, 573 (11th Cir. 2010).
Further, and more compelling, the circuit court correctly instructed the jury on the process of weighing the aggravating circumstances and the mitigating circumstances. Specifically, the circuit court instructed the jury that an "aggravating circumstance is a circumstance which is specified by law" and "that the punishment that should be imposed upon the defendant depends on whether any aggravating circumstances exist beyond a reasonable *1119 doubt, and, if so, whether the aggravating circumstances outweigh the mitigating circumstances." (R. 2418.) The circuit court then identified and defined for the jury the five aggravating circumstances that it could consider. (R. 2420-22.) Presuming, as this Court must, that the jury followed the circuit court's instructions, it did not consider Frances Curry's and Rena Curry's testimony when deciding whether to sentence Smith to death. See Ex parte Belisle, 11 So.3d 323, 333 (Ala. 2008) ("[A]n appellate court 'presume[s] that the jury follows the trial court's instructions unless there is evidence to the contrary.' " (quoting Cochran v. Ward, 935 So.2d 1169, 1176 (Ala.2006) ); Thompson v. State, 153 So.3d 84, 158 (Ala. Crim. App. 2012). Likewise, the circuit court did not mention Frances Curry's and Rena Curry's testimony when reweighing the aggravating circumstances and mitigating circumstances and when sentencing Smith to death.
Finally, this Court must presume that the "jurors [did] not leave their common sense at the courthouse door." Ex parte Rieber, 663 So.2d 999, 1006 (Ala. 1995). The jury had already found, beyond a reasonable doubt, that Smith had committed his offense in the manner described by the Currys, i.e., intentionally. Moreover, the State's desired outcome in the penalty phase was the imposition of the death penalty. Consequently, by virtue of the fact that Frances Curry and Rena Curry took the stand to testify for the State in the penalty phase of Smith's trial, the jury should have been well aware that the Currys wanted Smith to be sentenced to death. Further, any impact the Currys' testimony conceivably could have had was tempered by Smith's Aunt Arleen Pollard's impassioned plea to the jury for it to recommend a sentence of life in prison without the possibility of parole.
In light of all these factors, I am of the firm conviction that the improper admission of the Currys' testimony did not influence the jury's or the court's sentencing determination, and Smith has not met his burden to show otherwise. Therefore, I disagree with the majority's decision to reverse Smith's sentences of death, and I respectfully dissent.